UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| AUSTIN SALWAY,<br><br>Plaintiff,<br><br>vs.<br><br>LT. WILSON, LIEUTENANT SHERIFF AT PENNINGTON COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN MEDICAL STAFF, NURSE AT PENNINGTON COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY; LISHA SMITH, MEDICAL NURSE AT PENNINGTON COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY; PENNINGTON COUNTY SHERIFF'S DEPARTMENT, RESPONDEAT SUPERIOR AT PENNINGTON COUNTY JAIL,<br><br>Defendants. | 5:22-CV-05069-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING FOR DISMISSAL |

Plaintiff Austin Salway filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Salway was an inmate[1] at the Pennington County Jail at the time this complaint was filed. Id. at 1. Salway moves for leave to proceed in forma pauperis and has filed a prisoner trust account

---

[1] Salway does not provide facts regarding the reason why he was detained at the Pennington County Jail. See Doc. 1. He states in his motion for leave to proceed in forma pauperis that his expected release date was October 24, 2022. Doc. 2 at 1. He is no longer in custody at the Pennington County Jail. See Current Inmates, Pennington County Jail, https://www.pennco.org/index.asp?SEC=CDB01E68-46D3-4C6D-9B71-B9E339009D8E (last visited Oct. 27, 2022). For purposes of this screening, the Court will treat Salway as if he was a pretrial detainee because he was incarcerated at a county jail when he filed the present action. See Doc. 1 at 1.

1

report. Docs. 2, 3. Salway has also filed a motion for appointment of counsel. Doc. 4. This Court now screens Salway's complaint under 28 U.S.C. § 1915A.

I. **Motion for Leave to Proceed in Forma Pauperis**

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Salway reports an average monthly balance for the past six months in his prisoner trust account of $0.00 and an average monthly deposit of $30.00. Doc. 3 at 1. Based on the information regarding Salway's prisoner trust account, this Court grants Salway leave to proceed in forma pauperis and waives the initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Salway must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute

places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Salway's institution. Salway remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997).

**II.    1915A Screening**

**A.    Factual Allegations of Salway's Complaint**

Salway claims that wart treatments he received from an unknown medical staff member and Nurse Lisha Smith at the Pennington County Jail resulted in damage to his fingers. Doc. 1 at 2, 5. Specifically, he claims that he placed a sick call on July 2, 2022, to be examined after medical staff applied "excessive amounts of Compound W . . . to areas not affected by warts, resulting in permanent damage to fingers[.]" Id. He claims that he was seen the next day by the unknown medical staff member, and she applied "yet more Compound W to warts, as well as unaffected areas of fingers on both hands[.]" Id. He also claims that the unknown medical staff member told him that she was "sure that's what it's supposed to do[.]" Id. Salway asserts that Smith applied more Compound W after he informed her of the original injury, but he makes no claims regarding

when this incident occurred.[2] See id. at 2, 5. He also asserts that Sgt. Johnson took pictures of the injuries on both his hands. Id. at 5.

Salway alleges that Lt. Wilson told him that the problem had been addressed and denied him access to the unknown medical staff member's name for the purpose of bringing a civil claim against the unknown medical staff member. Id. He alleges that he also asked other officers and the unknown medical staff member for her name and never received an answer. Id. Salway asserts that he "[e]xperienced pain and suffering at the extreme indifference of medical staff" and that "Lt. Wilson rejected [his] grievance and grievance was unresolved." Id. He brings claims against Lt. Wilson, the unknown medical staff member, and Lisha Smith in their individual and official capacities, and he also brings claims against the Pennington County Sheriff Office.[3] Id. at 2. Salway seeks $130,000 in "monetary damages[,]" $25,000 in punitive damages, and "any and other such relief [the Court] deems just, fit, proper, and equitable." Id. at 8.

### B. Legal Standard

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam);

---

[2] The exact roles played by the unnamed medical staff member and Smith are unclear from Salway's complaint. In his statement of facts, he does not specify who applied an excessive amount of Compound W the first time and states that "unknown medical staff" was responsible for the second application of Compound W. Doc. 1 at 5. But in the defendants section of his complaint, he states that unknown medical staff repeatedly used Compound W and that Lisha Smith "put more Compound W on" after she was informed of his initial injury. Thus, this Court construes Salway's complaint as alleging that the unknown medical staff member injured him by applying Compound W either the first or second time and that Smith further injured him by applying Compound W at some point after that.

[3] Salway names the Pennington County Sheriff's Department as a defendant in this lawsuit. Doc. 1 at 2. The defendant's actual name is the Pennington County Sheriff Office. This Court will use the defendant's actual name in this order.

Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation removed) (quoting Twombly, 550 U.S. at 556). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or

(2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C. Salway's Causes of Action

#### 1. Claims Against the Pennington County Sheriff Office

Salway brings claims against the Pennington County Sheriff Office. Doc. 1 at 2. A county Sheriff Office is "not [a] legal entit[y] subject to suit; therefore, the claims against [it] must be dismissed." In re Scott Cnty. Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987), aff'd, Myers v. Scott County, 868 F.2d 1017 (8th Cir. 1989); cf. Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992) (holding that departments or subdivisions of city government, such as the police department or paramedic services, "are not juridical entities suable as such" in a § 1983 action). Also, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); see also Larsen v. Minnehaha Cnty. Jail, 2008 WL 4753756, at *2 (D.S.D. Oct. 24, 2008) (finding that the county jail and city police department could not be held vicariously liable for the actions of its employees). Thus, Salway's claims against the Pennington County Sheriff Office are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 2. Official Capacity Claims for Money Damages

Salway brings claims against the unknown medical staff member, Wilson, and Smith in their official capacities for money damages. Doc. 1 at 2, 8. These defendants were employees of the Pennington County Jail at the time of the incidents in question. See id. at 2. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).

Salway's official capacity claims against the unknown medical staff member, Wilson, and Smith are equivalent to claims against Pennington County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Salway makes no claims regarding official policies or unofficial customs. He only alleges that the unknown medical member injured him when she applied Compound W to his warts, that Smith further injured him by applying more Compound W, and that Wilson interfered with his ability to file this lawsuit by refusing to provide the name of a potential defendants. Doc. 1 at 2, 5. Thus, Salway's claims against the unknown medical staff member, Wilson, and Smith in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Individual Capacity Claims and Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Salway's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

#### a. Deliberate Indifference to Serious Medical Needs Claims

Salway alleges that the unknown medical staff member who injured his fingers with Compound W and Smith, who further injured his fingers by applying more Compound W, violated his Eighth Amendment rights. Doc. 1 at 2, 5. Construed liberally, Salway brings deliberate indifference to serious medical needs claims against the unknown medical staff member and Smith in their individual capacities and in their official capacities for injunctive relief. See id.

8

The Eighth Amendment is not implicated until after "a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977). A pretrial detainee's right to be free from punishment is protected by the Due Process Clause of the Fourteenth Amendment. See id.; Bell v. Wolfish, 441 U.S. 520, 535-37 (1979). The United States Court of Appeals for the Eighth Circuit has explained that the appropriate standard for Fourteenth Amendment due process inadequate medical care claims by pretrial detainees is the same deliberate indifference standard that applies to inadequate medical care claims by prisoners under the Eighth Amendment. Karsjens v. Lourey, 988 F.3d 1047, 1051-52 (8th Cir. 2021). The "plaintiff must show that 'officials knew about excessive risks to his health but disregarded them, and that their unconstitutional actions in fact caused his injuries.' " Id. at 1052 (quoting Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006)). Thus, this Court will apply the Eighth Amendment deliberate indifference standard.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement

with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estate of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Salway fails to allege facts sufficient to state claims for deliberate indifference to serious medical needs against the unknown medical staff member and Smith. The injuries to his fingers are serious medical needs, although his warts are likely not serious medical needs. But even assuming that both the injuries and the warts are serious medical needs, Salway does not allege that the unknown medical staff member or Smith knew of but deliberately disregarded those needs. See Doc. 1 at 2, 5. Instead, he alleges that they injured him while treating those needs and accuses them of "malpractice[.]" See id. Thus, Salway's Fourteenth Amendment deliberate indifference to serious medical needs claims against the unknown medical staff member and Smith in their individual capacities and in their official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

10

### b. Access to the Courts Claim

Salway claims that Wilson violated his Eighth Amendment rights by denying him access to the name of the unknown medical staff member that injured him. Doc. 1 at 2, 5. Construing his complaint liberally, Salway brings a First Amendment access to the courts claim against Wilson in his individual capacity and in his official capacity for injunctive relief. See id.

"The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353).

Salway fails to allege an actual injury as required by Lewis. He claims that Wilson denied him access to the unknown medical staff member's name so that he could file a lawsuit, but he does not identify a nonfrivolous legal claim that has been frustrated or impeded. See Doc. 1 at 5; Johnson, 142 F.3d at 1089 (citing Lewis, 518 U.S. at 353). Thus, Salway's First Amendment access to the courts claim against Wilson in his individual capacity and in his official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. State-Law Medical Malpractice Claims

Salway brings state-law medical malpractice claims against the unknown medical staff member and Smith for their excessive use of Compound W. Doc. 1 at 2, 5. Under 28 U.S.C. § 1367(a), this Court shall have supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the civil action over which this court has original jurisdiction. But

the court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Thus, because all of Salway's federal-law claims have been dismissed, this Court declines to exercise supplemental jurisdiction over his state-law claims. Salway's state-law medical malpractice claims against the unknown medical staff member and Smith are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### III. Order

Accordingly, it is

ORDERED that Salway's motion for leave to proceed in forma pauperis, Doc. 2, is granted and his initial filing fee is waived. It is further

ORDERED that Salway's claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l). It is finally

ORDERED that Salway's motion for appointment of counsel, Doc. 4, is denied as moot.

DATED October 28, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE